IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CYNTHIA TURNER,

      Plaintiff,

v.                                     CASE NO. 4:11-cv-567-RS-WCS

BOB INZER, in his official capacity as
LEON COUNTY CLERK OF THE COURT,

      Defendant.
_____/

## ORDER

Before me are Defendant's Motion for Summary Judgment (Doc. 40), Plaintiff's Response in Opposition (Doc. 48), and Defendants' Reply (Doc. 56).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398

U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff.  *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)).  " 'All reasonable doubts about the facts should be resolved in favor of the non-movant.' "  *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiff is an African-American female.  In March 2004, she was hired by Defendant to be an Administrative Assistant to Finance Director Bill Bogan.  In October 2006, David Reid took the position as Finance Director, and Plaintiff continued her work as the administrative assistant to Reid.  (Doc. 42-1, p. 2).  One

of Plaintiff's duties included taking minutes at meetings of the Leon County Investment Oversight Committee ("IOC"). *Id.* at 3. The IOC meets quarterly and makes recommendations to the Leon County Board of County Commissioners ("Board") about investment policy. Plaintiff would prepare the minutes from the meetings for review and approval by Reid before submission to the IOC. Reid would then present the recommendations by the IOC to the Board for approval. (Doc. 42-2, p. 6)

On August 11, 2010, the IOC discussed whether the county's investment policy should be changed. The policy limited investments the county could buy if the investment was more than fifteen percent of the portfolio. If an investment is over fifteen percent, then the Finance Director must approve the investment. *Id.* at 11. Plaintiff did not prepare a draft of the meeting's minutes until October 28, 2010. However, on September 14, 2010, Reid had already presented the IOC's recommendation to the Board, which the Board approved. (Doc. 42-1, p. 6).

In Plaintiff's initial draft, she included a sentence that indicated the county was out of compliance with the 15% policy limits. (Doc. 44-1, p. 28-28). This was emailed to Reid and Normal Parrish, the Treasury Manager, for review. Parrish edited Plaintiff's proposed language by striking the portion stating "thereby being out of compliance" and added the following language:

> As money is draw down during the year, and the balance decreases, and in some cases higher balances are left in the higher-earning pools resulting in

3

> some pools exceeding the 15 percent policy limits for each pool. The finance
> director reviews and approves the investments and drawdowns as the market
> changes.

*Id.* at 30-31. Parrish sent her changes to Plaintiff and Reid. Reid deleted the language that both Parrish and Plaintiff had written regarding the investment policy. *Id.* at 33-34. "Reid felt that the discussion about the policy limits was irrelevant because that was only part of the discussion and not the conclusion or recommendation to the committee." (Doc. 41, p. 4).

After receiving the changes from Parrish and Reid, Plaintiff listened to the tape of the meeting again. She re-inserted her original "out of compliance" sentence and emailed it to Reid and Parrish and attached the recording of the meeting. (Doc. 44-1, p. 37-42).

On October 29, 2010, Reid met with Plaintiff and Parrish about the minutes. Reid discussed the policy changes with Plaintiff and believed that they had reached a consensus about the minutes and that his version would be sent to the IOC. Plaintiff, however, did not agree with Reid.

On November 1, 2010, Plaintiff went to County Auditor Sam Scallan to seek his advice. (Doc. 42-1, p. 13). Plaintiff stated that she went to Sam Scallan as a colleague because she considered him a person "with high morals" who would give her good advice. *Id.* Scallon testified that "[Plaintiff] told me that there was a conversation that took place in the [IOC] meeting that she felt needed to be in the

4

minutes, but that Mr. Reid said didn't need to be in the miutes.  And I think she was asking me my opinion."  (Doc. 42-2, p. 17).  Scallon also that "she didn't say it was illegal, inappropriate.  She just said that the conversation [from the meeting] needs to be in there."  *Id.* at 19.

After meeting with Scallon, Plaintiff emailed her version of the minutes to the IOC contrary to Reid's instruction to email his version. (Doc. 44-1, p. 45). Plaintiff also highlighted the language that Reid wanted deleted. *Id.*  In her email, Plaintiff wrote, "Particularly, let me know if the italicized verbiage accurately reflects the Committee's direction."  *Id.*  After she sent version of the minutes, Reid ordered Plaintiff to email his version of the minutes, which she did.  On November 17, 2010, the IOC approved Reid's version of the minutes.  *Id.* at 15.

On November 19, 2010, Reid and Betsy Coxen, Assistant Finance Director, met with Plaintiff to discipline her for emailing her version of the minutes contrary to Reid's instruction.  *Id.* at 15-16.  Plaintiff testified that Reid insisted on speaking first and informed her that she was being suspended for three days and transferred to the Court's Department to be a cashier.  *Id.* at 16.  *After* being informed about the disciplinary action, Plaintiff then informed him of her conversation with Scallon.  *Id.*  Plaintiff said, "I told [Reid] I had gone to Sam to ask for guidance…."  *Id.*

On November 29, 2010, Plaintiff was transferred to Central Cashiering and had a probationary period. *Id.* at 130.  She was kept at the level of Court Specialist III so there was no reduction in her salary, benefits, or pay grade. *Id.* at 131-34. Plaintiff began training immediately.  From January 5, 2011, to March 7, 2011, Plaintiff took paid medical leave for surgery. *Id.* at 152-54.  While on leave, Plaintiff filed the Equal Employment Opportunity Commission ("EEOC") charge against Defendant on January 17, 2011.  (Doc. 44-1, p. 61).  Plaintiff continued her training when she returned from leave.

Court's Department Policy 4-4 addresses when data entry errors by Cashiers cause false arrests and/or drivers' licenses suspensions, known as "suspensions-in-error."  The policy states: "Ten or more improper suspensions within a 12 month period may result in the following discipline: additional suspensions without pay; probation; reduction in pay and/or grade; transfer with probation; and termination." (Doc. 46-39, p. 5).

Between October 25, 2011, and April 30, 2012, Plaintiff was given six warnings for fourteen instances of suspensions-in-error and was ultimately terminated.  (Doc. 46-38).  Plaintiff's supervisor testified that Plaintiff was the only Cashier to ever have fourteen suspensions-in-error during a twelve month period. (Doc. 44-1, p. 7).  Plaintiff contends that she did not receive adequate training and received more intense scrutiny than other employees.

Plaintiff filed this lawsuit on May 3, 2011, for whistleblower retaliation under FLA. STAT. § 112.3187 and race discrimination and whistleblower retaliation under 42 U.S.C. § 2000e et seq..

### III. ANALYSIS

*Whistleblower Retaliation*

Plaintiff alleges both state and federal whistleblower retaliation claims under Florida's Whistleblower Act ("FWA") and Title VII. In analyzing claims brought under the FWA, courts have applies the framework from Title VII whistleblower retaliation cases. *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1132-33 (Fla. 4th Dist. Ct. App. 2003). To establish a *prima facie* case for whistleblower retaliation, Plaintiff must show that: (1) she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and (3) there is a causal relationship between the two events. *Id.* at 1132.

Throughout the case, Plaintiff alleged that the conversation she had with County Auditor Sam Scallan about the IOC's non-compliance with the policy was the whistleblower complaint. Plaintiff claims she was retaliated against when she was suspended and transferred because of this conversation with Scallan. Plaintiff also contends that she was terminated because of this conversation and for her EEOC charged filed in January 2011.

In Plaintiff's Second Amended Complaint, she claims that she is entitled to whistleblower protection because she "reported malfeasance, misfeasance, and other acts" pursuant to FLA STAT. § 112.3187(5). (Doc. 26-1, p. 6). In Plaintiff's Response to Defendant's Motion for Summary Judgment, Plaintiff changes her argument to say that her conversation with Scallon was part of an "investigation, hearing, or other inquiry" under FLA. STAT. § 112.3187(7). Additionally, Plaintiff alleges that the emails she sent to Reid and the IOC constitute a written complaint, which is required by FLA. STAT. § 112.3187(7).

First, Plaintiff's argument that she was part of an "investigation, hearing, or other inquiry" is unfounded because FLA. STAT. § 112.3187(7) requires that the person must be "requested to participate" in the investigation. Scallon did not request Plaintiff's participation in any inquiry, and therefore, this section is inapplicable.

Second, throughout the case until Plaintiff's recent response, Plaintiff characterized her conversation with Scallon as seeking advice from a colleague, not a complaint. In her response to First Interrogatory No. 10, Plaintiff wrote, "I sought Mr. Scallon's guidance in the situation." In Plaintiff's deposition, Plaintiff testified that she was just seeking advice from Scallon:

> Q: And why did you feel that the auditor was the appropriate person to go talk to about this?

> A: I did not. I knew Sam was a person with high morals, and I knew he would tell me, he would give me good advice.
>
> Q: So you were just asking for advice from a colleague?
>
> A: Yes.

(Doc. 42-1, p. 13).

Scallon's deposition testimony supports that Plaintiff simply went to him seeking advice. Scallon testified that "[s]he told me that there was a conversation that took place in the committee meeting that she felt needed to be in the minutes, but that Mr. Reid said didn't need to be in the minutes. And I think she was asking me my opinion." (Doc. 42-2, p. 17). He went on to say that "she didn't say say it was illegal, inappropriate. She just said, that conversation I think needs to be in there." *Id.* at 19.

Plaintiff's testimony, which is corroborated by Scallon's testimony, shows that her conversation with Scallon was not a complaint that would qualify as whistleblowing. As she said numerous times, she was seeking advice.

FLA. STAT. § 112.3187(7) states, "[t]his section protects employees and persons who disclose information on their own initiative in a *written and signed* complaint… or employees who file *any written complaint* to their supervisory officials." (emphasis added). In her Second Amended Complaint, Plaintiff alleges that the written communications were the emails that she sent to Reid and the IOC.

9

However, after being asked numerous times in her deposition, Plaintiff repeatedly answered that she blew the whistle to Sam Scallon, not Reid or the IOC. (Doc. 42-1, p. 52).  She never said that the email she sent to Reid or the IOC constituted her complaint.

Additionally, the evidence shows that even if I do consider the email as her written communication, it still isn't a complaint protected by FWA.  When Plaintiff sent her version of the minutes to Reid and the IOC, the body of the email stated, "Please make necessary changes/corrections and forward. Particularly, let me know if the italicized verbiage accurately reflects the Committee's direction." (Doc. 44-1, p. 45).  Even when the Court construes the FWA liberally, this email still cannot be considered a written complaint.  *See Irven v. Dep't of Health & Rehab. Servs.*, 790 So. 2d 403, 405 (Fla. 2001).

Without a whistleblowing complaint, Plaintiff fails to meet the first prong for whistleblower retaliation.

### *Race Discrimination*

To establish a *prima facie* case of discrimination, Plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) she was qualified to do the job.  *Burke-Fowler v. Orange County, Fla.*  447 F.3d 1319, 1323 (11th

Cir. 2006). To establish a claim for disparate treatment discrimination, a plaintiff can use direct evidence or circumstantial evidence of discrimination. *Id.* The framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973), and *Texas Department of Community Affairs v. Burdine,* 460 U.S. 248, 101 S.Ct. 1089 (1981), is used in evaluating disparate treatment claims supported by circumstantial evidence. *See Wilson v. B/E Aerospace*, 376 F.3d 1079, 1087 (11th Cir. 2004). Mere speculation of a discriminatory motive is insufficient. *Edwards v. Acadia Realty Trust, Inc.*, 141 F.Supp.2d 1340, 1346-47 (M.D. Fla. 2001).

Once a plaintiff has presented evidence of discrimination, the employer must articulate a legitimate, non-discriminatory reason for the employee's rejection. *Id.* at 1089-90. If the employer meets this burden of production, the plaintiff must then establish that the proffered reason is pretextual. *Id.* at 1090.

Defendant contends that Plaintiff has not provided any evidence of similarly situated employees outside of her protected class that were treated more favorably, and therefore, fails to meet the third prong of the test. "When a plaintiff alleges discriminatory disciple, to determine whether employees are similarly situated, we evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.' " *Burke-Fowler,* 447 F.3d at 1323 (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)(citations and

11

quotation marks omitted)).  "When making that determination, '[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing applies with oranges.' " *Id.*(citation omitted).

Plaintiff offers two potential comparators: Serita Teal, a white employee who had to be retrained and had ten suspensions-in-error but was not terminated, and Daphne Pinedo-Ramos, a white employee who was arrested for shoplifting and was terminated a year after her arrest for stealing. (Doc. 48, p. 21).  Serita Teal had ten suspensions-in-error in a one-year period. (Doc. 56-1, p. 9-43).  Like Plaintiff, she received written warnings and was put on probation for those errors.  Teal's fifth warning stated, "In light of this 10th suspension, Serita will be placed on probation through at least the end of June 2009, and may not make any further 'original error' improper DL suspensions in that time. If she does, she will be terminated." *Id.* at 37.  Teal did not cause any suspensions-in-error during her probationary period.  Pursuant to Clerk's Office policy, after a year from her first corrective action, Teal's warnings were reset to zero, and she started the year with a fresh start. (Doc. 46-39).

Teal's situation is unlike Plaintiff's because Plaintiff made fourteen errors in a six month period, while Team made ten errors in a twelve month period.  Additionally, Plaintiff was not put on probation until after her thirteenth error,

whereas Teal was put on probation after her tenth error.  Lastly, Plaintiff was terminated after her fourteenth error, but Teal would have been terminated after her eleventh.  Therefore, the evidence shows that Teal was not treated *more* favorably, but *less* favorably.

Daphne Pinedo-Ramos is also not a similarly situated comparator.  Pinedo-Ramos worked in the remote traffic office, not in Central Cashiering downtown with Plaintiff.  Additionally, fourteen suspensions-in-error leading to termination is not similar to Pinedo-Ramos arrest and theft.

However, the inquiry does not stop there.  If Plaintiff presents other circumstantial evidence suggesting racial discrimination, Plaintiff could still establish a *prima facie* case. *Burke-Fowler*, 447 F.3d at 1325.  Plaintiff must present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin, Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)(citations omitted).  The circumstantial evidence in lieu of a comparator "must suggest discrimination with force similar to that implied by treated nearly identical offenders differently." *Bell v. Crown Management, LLC,* 844 F.Supp.2d 1222, 1234 (S.D. Ala. 2012).

Plaintiff fails to offer "a convincing mosaic of circumstantial evidence." Plaintiff frequently refers to the lack of training she received, the monitoring of her work, and the discipline she received as circumstantial evidence of race

discrimination. However, the example that Plaintiff herself provided, Serita Teal, shows that other employees were disciplined similarly, if not more harshly, than Plaintiff. Plaintiff also relied on testimony of two black co-workers that believed they were treated differently because of their race, but their complaints about their experiences are irrelevant to the issue of Plaintiff's discrimination claims. (Doc. 47, p. 17-18). Without strong circumstantial evidence in lieu of a similarly situated comparator, Plaintiff cannot make a *prima facie* case for discrimination.

Additionally, even if Plaintiff could make a *prima facie* case, Defendant had a legitimate non-discriminatory reason for terminating Plaintiff's employment: she had fourteen suspensions-in-error in less than twelve months. According to the department's policy, "[t]en or more improper suspensions within a 12 month period may result in the following discipline: additional suspensions without pay; probation; reduction in pay and/or grade; transfer with probation; and termination." (Doc. 46-39). Plaintiff does not offer any evidence that would suggest her termination was pretextual.

## IV. CONCLUSION

1. Defendant's Motion for Summary Judgment (Doc. 40) is **GRANTED**.
2. All pending motions are **DENIED as moot**.
3. The Clerk is directed to close the case.

**ORDERED** on September 26, 2012.

            <u>/S/ Richard Smoak</u>
            **RICHARD SMOAK**
            **UNITED STATES DISTRICT JUDGE**